**IN THE UNITED STATES DISTRICT COURT**
**FORE THE EASTERN DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION, AT GREENEVILLE**

| | | |
|---|---|---|
| **LISA L. THORNBURGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **NO: 2:09-CV-141** |
| | ) | |
| **RANDY CHRISTY, MARK McLANE,** | ) | |
| **GLENNA ESTEPP, JOHN HUFFINE,** | ) | |
| **SHERIFF STEVE BURNS, NEIL** | ) | |
| **MATTHEWS, personally and as agents for** | ) | |
| **the Greene County Sheriff's Department,** | ) | |
| **the GREENE COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT, YHONA JONES, personally** | ) | |
| **and as agent for the Greene County School** | ) | |
| **Board, the GREENE COUNTY SCHOOL** | ) | |
| **BOARD, BECKY DAVIS, personally and as** | ) | |
| **agent for the Tennessee Department of Human** | ) | |
| **Services, the TENNESSEE DEPARTMENT** | ) | |
| **OF HUMAN SERVICES, DR. REMY** | ) | |
| **SEGADACRA, personally and as agent for** | ) | |
| **Takoma Adventist Hospital, Wellmont Health** | ) | |
| **System, DR. GAINES, personally and as** | ) | |
| **agent for Woodridge Hospital, Mountain** | ) | |
| **States Health Alliance, DR. MARCUS** | ) | |
| **KILGUS, personally and as agent for** | ) | |
| **Woodridge Hospital, Mountain States Health** | ) | |
| **Alliance, WAYNE PETERSON, personally** | ) | |
| **and as an agent for Frontier Health,** | ) | |
| **FRONTIER HEALTH, CINDY FINK,** | ) | |
| **personally and as agent for Mosheim Public** | ) | |
| **Library, Town of Mosheim,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**MEMORANDUM OPINION AND ORDER**
_____

This *pro se* complaint is before the Court on several pending motions:

1.  Motion to Dismiss filed by the defendants, Wayne Peterson, personally and as agent

for Frontier Health and Frontier Health, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, [Doc. 21];

2.      Motion to Dismiss filed by defendants Mountain States Health Alliance and Mountain States Health Alliance d/b/a Woodridge Hospital, pursuant to Rule 12, Federal Rules of Civil Procedure, [Doc. 23, 25];[1]

3.      Motion to Dismiss filed by defendants Takoma Adventist Hospital and Wellmont Health System pursuant to Rule 12, Federal Rules of Civil Procedure, [Doc. 27];

4.      Motion of defendants Randy Christy, Mark McClain, Glenna Estepp, John Huffine, Sheriff Steve Burns, Neil Matthews, Yhona Jones, the Greene County Sheriff Department and Greene County Board of Education to dismiss pursuant to Rule 12, Federal Rules of Civil Procedure, [Doc. 52];[2]

5.      Motion to Dismiss filed by the Tennessee Department of Human Services and Rebecca Davis pursuant to Rule 12(b)(1) and (6), Federal Rules of Civil Procedure, [Doc. 57];

6.      Motion to Dismiss filed by Town of Mosheim, Mosheim Public Library and Cindy Fink pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, [Doc. 60]; and

7.      Motion for Injunction filed by the *pro se* plaintiff, [Doc. 54].[3]

The *pro se* plaintiff has not responded to any of the motions to dismiss.[4]  For the reasons which follow, the motions of all defendants to dismiss will be GRANTED and this complaint will be DISMISSED.  Plaintiff's *pro se* motion for injunction will be DENIED AS MOOT.

---

[1]  Documents 23 and 25 appear to be duplicate motions to dismiss.

[2]  The motion filed by the defendant contains factual allegations which are not in plaintiff's complaint.  The Court has not considered these in ruling on their motion.

[3]  Styled as a "Motion For Appointment of Counsel and Motion For Injunction," the Magistrate Judge has previously denied the motion for appointment of counsel.  *See* Doc. 56

[4]  This Court's local rule provides that "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought."  E.D. TN L.R. 7.2.  On August 24, 2009, plaintiff moved for an extension of time to respond to the then pending motions to dismiss [Doc. 51], based largely on her "homelessness," [Doc. 51].  On August 25, 2009, the Magistrate Judge granted the motion and extended the time for response to September 18, 2009, [Doc. 55], however, plaintiff never filed a response to any of the motions to dismiss.

## I.   Standard of review

### A.   Rule 12(b)(1) Standard of Review

A Rule 12(b)(1) motion to dismiss an action for lack of subject matter jurisdiction may be premised on a facial attack or a factual attack. *See Abdelkhaleq v. Precision Door of Akron*, No. 5:07cv3585, 2008 WL 3980339 at *2 (N.D.Ohio Aug.21, 2008) (O'Malley, J.). A facial attack tests the adequacy of the complaint, *Scheuer v. Rhodes*, 416 U.S. 232, 235-37, (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, (1984), while a factual attack evaluates the actual existence of subject matter jurisdiction, *Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D.Ohio 1997). The importance of this distinction has to do with the nature of the Court's consideration of the facts and allegations presented in connection with the Rule 12(b)(1) motion. If the motion presents a facial attack, the Court must construe the pleadings in the light most favorable to the plaintiff and may not consider extrinsic materials. *Abdelkhaleq*, 2008 WL 3980339 at *2 (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994)). In contrast, if the motion presents a factual attack, the Court is free to consider extrinsic evidence and may weigh the evidence of its own jurisdiction without affording the plaintiff the presumption of truthfulness that is the hallmark of the Rule 12(b)(6) standard. *Id.*; *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986); *see also Ernst v. Rising*, 427 F.3d 351, 372 (6th Cir.2005).

### B. Rule 12(b)(6) Standard of Review

The Court may dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983) (citing *Sims v. Mercy Hospital of Monore*, 451 F.2d 171, 173 (6th Cir.1971)). When

evaluating a complaint in light of a motion to dismiss, the Court must accept all of the plaintiff's allegations as true and resolve every doubt in the plaintiff's favor. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir.1990) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). As the Sixth Circuit recently stated:

> Even under Rule 12(b)(6), a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly*, .... The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id.* at 1965 ...; *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir.2007).

*Bishop v. Lucent Techs., Inc.*, 520 F.3d 516. 519 (6th Cir.2008). Accordingly, a claim should be dismissed if it does not "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory . . . ." *Twombly*, 127 S.Ct. at 1969 (omitting citations and quotations, emphasis in original).

As noted above, the plaintiff is a *pro se* plaintiff. As a general rule, pleadings filed by a *pro se* litigant are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and such a pleading would not ordinarily be dismissed "simply because . . . the plaintiff's allegations [are] unlikely," *Denton v. Hornada*, 504 U.S. 25, 33 (1992). The *pro se* plaintiff here, however, is a trained lawyer. According to her complaint, she is a graduate of the University of Maryland Law School, although apparently not admitted to the bar and licensed. Because her pleading does not pass muster under even the less stringent standard, the Court need not decide whether her complaint should be assessed under the more formal standard

4

applied to lawyer drafted pleadings.

## II.    Plaintiff's complaint

Plaintiff's complaint was initially lodged with the Court on July 15, 2009, on one of the Court's form complaints. The original complaint named the Greene County Sheriff's Department, Steve Burns, Neil Matthews and Deputy Christy as defendants. An amended complaint, which is the subject of the pending motions to dismiss, was filed on July 21, 2009. The amended complaint is a rambling, somewhat incomprehensible complaint of 20 pages, with 62 separately numbered paragraphs. The complaint alleges a violation of federal civil rights as protected under 42 U.S.C. § 1983, violation of constitutional rights under the Eighth and Fourteenth Amendments and state law tort claims of "respondeat superior, intentional infliction of emotional distress, medical negligence, negligent infliction of emotional distress, invasion of privacy, defamation, medical malpractice, [and] negligent misrepresentation." As far as the Court can discern, the following facts, accepted as true for the purpose of the Rule 12 motions to dismiss, are set forth in the complaint:

In May, 2005, Becky Davis, an employee of the Tennessee Department of Human Services, and Greene County Sheriff's Deputy Mike Fincher went to the residence of the plaintiff's father after receiving an anonymous complaint regarding the plaintiff. After a conversation with plaintiff's father, Deputy Fincher took Thornburg "into custody, placing her in a cruiser, with the windows rolled up, handcuffed, during hot weather with no air." Davis and Fincher "drafted a complaint against plaintiff,[5] stating that she was 'crazy', 'she needed help', and 'they would help her'." The

_____

[5] Although it is not at all clear from the amended complaint, Davis and Fincher apparently initiated a complaint for involuntary commitment for mental health treatment. Under Tennessee law, a person may be detained by an officer involuntarily if the person is mentally ill and poses an immediate substantial threat of serious harm to self or others. See Tenn. Code Ann. § 33-6-401, *et seq*.; *Ellison v. Garbarino*, 48 F.3d 192 (6th Cir. 1995).

plaintiff was taken to Takoma Adventist Hospital where she was interviewed by defendant Wayne Peterson, a social worker. She was then taken to the local courthouse, and an attorney and guardian *ad litem* were appointed for her. The civil commitment proceeding against the plaintiff was subsequently dismissed in a hearing before a state court judge.

During the summer of 2005, after the civil commitment proceeding had been dismissed, "plaintiff was then subjected to traffic 'accidents' in Greene County." Plaintiff's automobile was forced off the side of the road by two vehicles, one with out of county license plates. Plaintiff called 911 and a Greene County Sheriff's deputy responded; however, the deputy refused to take any action and no further investigation was undertaken by the Sheriff's Department against the unknown drivers of the two vehicles.

In a second incident in the summer of 2005, plaintiff was riding her bicycle and met a car traveling at a high rate of speed. Plaintiff swerved to avoid being hit by the car, was thrown to the ground and suffered a fractured arm. After initially stopping, the driver of the automobile "sped away." Plaintiff once again called 911 and a Greene County constable responded. According to the complaint, the constable refused to investigate or take any further action. Plaintiff was transported to Takoma Hospital where she was treated for her injuries.

On or about May 30, 2005, plaintiff was arrested and taken to the Greene County Jail. She was placed in a holding cell and told to "strip," after which she was instructed to put on a paper sheet. She was never given a bed, sheet or a towel. Plaintiff asked for counsel on several occasions throughout the night. Plaintiff was told that if she signed a contract that she would not commit suicide she would be placed in a bed in the general population cell. At the time of her arrest, plaintiff was suffering from a fever, weakness, chills and flu-like symptoms but was denied

treatment by the jail staff. After several hours, and after experiencing convulsions, the jail nurse provided her with "some fever medication."[6] Plaintiff was deprived of sleep throughout the night and was "subjected to threats, interrogation, intimidation and harassment" because she would not agree to a psychiatric evaluation. At approximately 7:00 a.m. the following morning, "Plaintiffs isolation cell was again invaded" by defendant Wayne Peterson, the person who had interviewed her at Takoma Hospital previously. Peterson informed Thornburg that she would be released if she agreed to a psychiatric evaluation.

After being held in the isolation cell for 24 hours, an "arrest warrant" was produced and counsel for plaintiff was once again appointed. Plaintiff was taken to the General Sessions Court for Greene County; her parents were present with a local attorney who represented them "in this bizarre action against plaintiff." Plaintiff was offered a diversion if she would submit to a psychiatric evaluation and she agreed, upon the advice of her counsel. Plaintiff was taken by deputies, handcuffed and shackled, to Takoma Adventist Hospital where she was evaluated by emergency room doctor, Remy Segadacra. Dr. Segedacra asked plaintiff the date and time but no other psychiatric evaluation was performed. Laboratory samples of blood and urine were taken and plaintiff was given Tylenol for her fever. Otherwise, she received no medical treatment. After her appointed counsel left Takoma Hospital, plaintiff was once again interrogated by defendant Wayne Peterson.

Plaintiff was then transported to Woodridge Psychiatric Hospital in Johnson City, Tennessee where she was ordered to strip and dressed in a hospital gown and hospital "footies". Once at

---

[6]  Plaintiff alleges that her mug-shot, which she has been unable to obtain, would show evidence of bruises, swollen face and general disorientation caused by an assault allegedly occurring during the night. The complaint never explains who is alleged to have committed the assault or under what circumstances.

Woodridge, plaintiff was seen by Dr. Gaines and was told that she was not paranoid schizophrenic, but was bipolar. Plaintiff obtained copies of her records from Woodridge Psychiatric Hospital; however, these records were stolen when her storage unit was broken into sometime in late 2008. Thornburg reported this theft to the Greene County Sheriff's Department and was asked by the deputy who took the report: "you are one of the defense contractors?" Plaintiff was treated while at Woodridge by Dr. Marcus Kilgus, a psychiatrist. While at Woodridge, plaintiff was "treated like an animal" and "her room was invaded and her notes were taken." She was kept at Woodridge for over 20 days and was "denied access to phones, friends, family, mail, news, religious observance, eating/interacting with others off of the Unit . . . wearing street clothes and shoes, fresh air and exercise, until a Washinton County Judge granted Plaintiff an Order for Treatment with Human Dignity."

Plaintiff filed a complaint with the Tennessee Board of Health Examiners about her treatment at Woodridge but the Board refused to investigate or respond to her complaint. During her stay at Woodridge, "plaintiff was subjected to some sort of intentional depersonalization," and she was denied access to group therapy. Dr. Gaines threatened her with permanent commitment. Plaintiff was finally taken to a Johnson City courtroom but no judge would hear her case, because "the facts were so biased." Plaintiff was released from Woodridge in July, 2005.

In early August, 2005, plaintiff was again arrested, this time by a Greeneville, Tennessee Police officer. Her car was impounded, she was taken to the Greene County Jail, and was once again held in an isolation cell. She was charged with reckless driving and released on bond. In the meantime, plaintiff went to California "to pursue a Masters degree in International Security Studies and Nonproliferation." She was forced to return from California for her court date, where the

charges of reckless driving were dropped and she was fined for speeding. Because of the costs of traveling from California and other associated costs and the $290.00 for the speeding ticket and court costs, plaintiff was unable to return to California. She sought, but could not obtain, full-time, permanent employment.

In August, 2006, plaintiff was employed by the Greene County Board of Education as a teacher's aide at Mosheim Elementary School. Plaintiff was hired by Principal Yhona Jones, a childhood friend. She was "assigned to an 8th grade student to remain with him, assist him with his assignments, and escort him to classes." After two weeks, and after being told she was doing a "great job," plaintiff was terminated in violation of "her contract with the Greene County School Board." Plaintiff overheard one of the office workers at the school state that "she is a crazy."

At various unspecified times, plaintiff was harassed by her neighbors, her apartment was broken into, placards/signs were placed outside her apartment stating "shes a crazy," "caution white trash inside," and was called a "crazy b–tch" by her "non-native neighbor." She was also charged "abnormally high electrical bills on her small unit." When she reported these things to a Greeneville Police officer, she was threatened with arrest.

At some unspecified time, plaintiff was refused entry into and use of the Mosheim Public Library by Cindy Fink, an employee of the library.[7] She was initially told that it was because she owed library fines but, after those fines were paid, Fink continued to refuse to allow her to use the public library. Plaintiff complained about her treatment to the Mosheim mayor and an alderman.

---

[7] Although the date of the refusal to allow plaintiff access to the Mosheim Public Library is unclear from the complaint, the context indicates that it was sometime prior to "early 2008."

On some date not clear from the complaint, plaintiff apparently left Tennessee in an effort "to start a new life". After unsuccessfully attempting to find employment, however, plaintiff returned to Tennessee in early 2008. On the night of her return, she went to her parents' home. Immediately after her return, defendant Becky Davis and other deputies employed by the Greene County Sheriff's Department begin making a series of "welfare checks" on plaintiff. After Greene County Sheriff's deputies or her father's neighbor, Peter Brainard, would visit, she noticed increased aggressiveness from her father. Plaintiff, believing that Brainard exerted undue influence on her parents, made numerous complaints to the Greene County Sheriff''s Department and the Tennessee Department of Human Services, to no avail. She sought assistance from Davis in seeking a restraining order against Brainard. Her request was ignored.

Plaintiff was repeatedly assaulted by her father and by Brainard. Neither Brainard nor plaintiff's father were arrested. Brainard had also taken items belonging to plaintiff's mother without her consent. When she complained to the Greene County Sheriff's Department about the assaults, Deputy Mark McLane told plaintiff "you are a smart ass, no wonder they assaulted you." Deputy Glenna Estepp approached plaintiff "as if to arrest her" after the complaint. Plaintiff contacted the Sheriff's Department to complain about Deputy McLane's "outrageous behavior," was placed on hold, and then hung up on. Throughout this period, deputies employed by the Greene County Sheriff's Department and Becky Davis continued to make "welfare checks" on the plaintiff.

Plaintiff overheard defendant Davis tell plaintiff's mother that she [plaintiff] could not get public housing in the State of Tennessee because she was mentally ill. In fact, "plaintiff was refused housing at the local Opportunity House." Plaintiff was repeatedly told by defendant Davis and Greene County Sheriff's Department deputies that she needed help, was "crazy," a "paranoid

schizophrenic," "dangerous," and various other "malicious defamatory labels." The "welfare checks" ceased for a couple of weeks until about June 24, 2009, after plaintiff "sought to file a Freedom of Information Act appeal . . . from the US Department of Energy, regarding the 2005 illegal HEU discharges onto the human population in Greene County." She sought "information about cases of bizarre cancer clusters in this area" and filed several FOIA requests with various federal agencies.

On July 10, 2009,[8] plaintiff rented a car to purchase groceries for her mother and father. When her father came to the house, he repeatedly called her a "crazy b- - -h," spit on her and threatened her life. Plaintiff called 911 and her father grabbed the phone and threw it to the ground. Plaintiff's father left the house, after shoving plaintiff's mother, and threatened both plaintiff and her mother with arrest. Approximately 20 minutes later, Deputy Christy arrived. Plaintiff and her father were both arrested and taken to the Greene County Jail. Plaintiff's father was given a private room; however, plaintiff was placed in a cell with a prisoner charged with attempted murder, given a mat, a towel, and told to sleep on the floor until her hearing. After two nights, plaintiff was placed in a holding cell. Plaintiff was then subjected to "humiliating proceedings in the Greene County room," where she witnessed the local assistant district attorney general, the Greene County attorney, defendant Matthews and Sheriff Steve Burns advise her mother that plaintiff was "crazy," "paranoid schizophrenic and needs help," a "nut case," an "alcoholic," and "abuses drugs." After being intimidated, plaintiff's mother agreed to drop all charges against plaintiff's father. Plaintiff, on the other hand, was taken to court in jail clothes and shackled, assigned to sit with other prisoners and

_____

[8] In paragraphs 12 and 13 of the complaint, the plaintiff describes an event occurring "on or about July 17, 2009" which appears to be the very same event later described as happening on July 10, 2009.

informed she had been charged with domestic assault. Her bond was set at $1,000.00. This bail was "intentionally excessive" so that "plaintiff would remain in jail and/or suffer homelessness" in violation of the United States Constitution. While in the Greene County Jail, plaintiff was subjected to "torture," "as defined under US criminal law and international law."

Plaintiff has undergraduate degrees from the University of Tennessee and graduated from the University of Maryland Law School. Plaintiff claims that she has suffered injury to her reputation, physical injury, is fearful of law enforcement, is afraid to travel domestically, cannot obtain and maintain employment and has been ostracized and held in contempt because of the actions of the Greene County Sheriff's Department. She claims that she has been intimidated and ridiculed and her rights under the United States Constitution and Tennessee law have been violated. She seeks $50,000,000.00 in compensatory and punitive damages and seeks an injunction to "enjoin the Defendants from further injury and harm to plaintiff's life, reputation and privacy."

## III.    Analysis and discussion

### A.    Defendants Wayne Peterson and Frontier Health

Defendants Wayne Peterson, personally and as agent for Frontier Health, and Frontier Health move to dismiss pursuant to Rule 12(b) on the grounds that plaintiff's claims against these defendants are barred by the applicable one (1) year statute of limitations set forth in Tenn.Code Ann. § 28-3-104. In her amended complaint, plaintiff asserts claims for violation of her federal civil rights under 42 U.S.C. § 1983, violation of her constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution and various state law tort claims, including intentional infliction of emotional distress, medical negligence, negligent infliction of emotional distress, invasion of privacy, defamation, medical malpractice and negligent misrepresentation.

These defendants further assert that plaintiff's claims under 42 U.S.C. § 1983 fail because the plaintiff does not assert that either of these defendants acted under color of law.

Although somewhat difficult to discern from plaintiff's amended complaint, plaintiff apparently alleges acts on the part of these defendants beginning around May, 2005. She alleges that she was "interviewed" by Peterson, "who identified himself as an unlicensed social worker" after she was taken to Takoma Hospital by a Greene County Sheriff's Department deputy in May, 2005, in connection with a civil commitment proceeding. Plaintiff identifies Peterson as an employee of Frontier Health. She claims that she was interviewed for a second time by defendant Peterson, this time at the Greene County Jail after she had again been taken into custody. Plaintiff alleges a third contact with defendant Peterson later that same day when he "begin interrogating plaintiff again." As a result of the events of May, 2005, including plaintiff's contact with defendant Peterson, she was involuntarily admitted to Woodridge Psychiatric Hospital in Johnson City, Tennessee. She was released from Woodridge in July, 2005. There is no reference to any act by either Peterson or Frontier Health after July, 2005, in the amended complaint.

To state a claim for a violation of § 1983, a plaintiff must demonstrate that: (1) a person, (2) acting under color of state law, (3) deprived her of a federal right. *Sperle v. Michigan Department of Corrections*, 297 F.3d 483, 490 (6th Cir. 2002). The two basic elements of a § 1983 claim are (1) that "some person has deprived (the plaintiff) of a federal right" and (2) that "the person who has deprived him of that right acted under color of state . . . law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). A person acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A person does not act under color of state law solely by virtue

of a relationship to the state; instead, liability depends on the nature of the conduct. *Doe v. Claiborne County*, 103 F.3d 495, 512 (6th Cir. 1996) (citing *Polk County v. Dodson*, 454 U.S. 312, 319-20 (1981)).

State statutes apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For § 1983 actions arising in Tennessee, the statute of limitations is one (1) year. *Tenn. Code Ann*. § 28-3-104(a)(3); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986). *Tennessee Code Annotated* § 28-3-104 provides for a one year statute of limitations for personal tort actions under Tennessee State law.[9]

As noted above, plaintiff's amended complaint contains no allegations of conduct by the defendants Peterson and Frontier Health after July, 2005. Thus, plaintiff's § 1983 claim for alleged constitutional violations and her state law tort claims are barred unless brought not later than the end of July, 2006. Plaintiff's complaint in this case was filed on July 15, 2009.[10] As a result, all of plaintiff's claims against defendants Wayne Peterson, personally and as an agent for Frontier Health, and Frontier Health are barred by the applicable statute of limitations. Furthermore, as these defendants also argue, plaintiff has made no allegation that Peterson or any other agent of Frontier Health acted under color of law in subjecting her to any violation of her civil rights and her claims

_____

[9]  As defendants Peterson and Frontier Health note in their memorandum in support of their motion, slander actions under Tennessee law must be commenced within six (6) months after the words are uttered. Actions for libel, however, are subject to the one year statute of limitations of *Tenn. Code Ann*. § 28-3-104. Because the result is the same regardless of whether the court applies the one year statute of limitations or the six month statute of limitations to plaintiff's defamation claim, the Court will apply the one year statute of limitations.

[10]  Although the Court's docket sheet shows July 21, 2009, as the date of filing of the plaintiff's complaint and amended complaint, she lodged her original complaint with the Clerk of this Court on July 15, 2009, along with her application to proceed *in forma pauperis*. The complaint was actually filed by the Clerk on July 21, 2009, after the Court approved plaintiff's application to proceed *in forma pauperis*. The date of filing, therefore, for statute of limitations purposes is July 15, 2009.

under § 1983 are subject to dismissal for this reason as well.

**B. Mountain States Health Alliance, Woodridge Hospital, Dr. Gaines and Dr. Marcus Kilgus**

As an initial matter, it is unclear whether plaintiff has sued Dr. Gaines and Dr. Kilgus personally, although the caption of the complaint suggests that she has. On the other hand, plaintiff's identification of the parties in her amended complaint does not list Dr. Gaines and Dr. Kilgus personally and apart from their status as employees of defendant Mountain States Health Alliance and/or Woodridge Hospital. The pending motion, [Docs. 23, 25], is filed on behalf of Mountain States Health Alliance, the corporate entity, and on behalf of Mountain States Health Alliance d/b/a Woodridge Hospital. The motion addresses the amended complaint's allegations of both direct liability and indirect liability by virtue of the doctrine of *respondeat superior* for the actions of Dr. Kilgus and/or Dr. Gaines. As set forth above, plaintiff's complaint asserts causes of action for violation of constitutional rights under 42 U.S.C. § 1983 and various state law claims. As with the prior defendants, plaintiff's complaint does not clearly set forth specific causes of action against these parties; however, for the purposes of this motion the Court will assume that plaintiff attempts to assert all causes of action against these defendants.

The motion of these defendants asserts that all causes of action against these defendants are barred by the applicable one-year statute of limitations, that as to any medical malpractice claim by virtue of the actions of Drs. Gaines or Kilgus, the plaintiff has failed to comply with *Tenn. Code Ann.* § 29-26-121, and that the claim for violation of 42 U.S.C. § 1983 fails because these defendants are private entities and not state actors and have committed no acts under color of state law.

As with defendants Peterson and Frontier Health, plaintiff's amended complaint contains no factual allegations of conduct by any of these defendants occurring after July, 2005. For the same

reasons set forth above, therefore, plaintiff's causes of action against these defendants are barred by the applicable statute of limitation. In addition, the complaint contains no allegation that any of these defendants are state actors or acting under color of state law and plaintiff's claims under 42 U.S.C. § 1983 are subject to dismissal for that reason as well. Although the motion was not filed on behalf of Dr. Gaines and Dr. Kilgus, the same rationale applies to any claims which plaintiff has asserted against them personally and the complaint against them will be dismissed as well.[11] Because these causes of action are clearly barred by the applicable statutes of limitation, the claim of these defendants that plaintiff failed to comply with *Tenn. Code Ann*. § 29-26-121 will not be addressed

### C. Dr. Remy Segadacra[12] , Takoma Adventist Hospital and Wellmont Health System

Takoma Adventist Hospital and Wellmont Health System have moved for dismissal of the amended complaint's allegations against them. As with prior defendants, it is difficult to discern from plaintiff's complaint which of her causes of actions she asserts against these particular defendants; however, for the purpose of deciding the motions to dismiss, the Court will assume that plaintiff intended to allege a violation of all causes of action as to these defendants, as well as Dr. Sagadacra. These defendants assert that plaintiff's causes of action against them are barred by the statute of limitations, that the § 1983 action fails because plaintiff does not allege that these defendants are state actors or acted under color of state law, but rather are private entities, and that

---

[11]  A summons was issued by the clerk for both Dr. Gaines and Dr. Kilgus. Each summons, however, was returned unexecuted. *See* Docs. 30, 31. Thus, it does not appear that Dr. Gaines and Dr. Kilgus are properly before the Court. Nevertheless, it is clear from the face of the complaint that this action should be dismissed against them as well.

[12]  Plaintiff has misnamed this defendant. His correct name, according to the motion, is Dr. Remy Sagadacra.

any claim for medical negligence is barred by the provisions of *Tenn. Code Ann*. §§ 29-26-121 and 122.

As set forth above, all of plaintiff's causes of actions against these defendants have a one year statute of limitations. As with other defendants, plaintiff's amended complaint contains no allegations of conduct by these defendants after July, 2005. Her complaint, therefore, filed on July 15, 2009, is barred as untimely. In addition, plaintiff's § 1983 claim against these defendants fails because she has not alleged an essential element of a cause of action under § 1983. Although Dr. Sagadacra is not a party to these defendants' motion, and has not himself moved to dismiss, it is apparent from the face of the complaint that the plaintiff's causes of action against Dr. Sagadacra are likewise barred and the claims against him will be dismissed as well. The claims of Takoma Adventist Hospital and Wellmont Health System that any claim for medical negligence is barred by plaintiff's failure to comply with *Tenn. Code Ann*. §§ 29-26-121 and 122 will be pretermitted.

### D. Cindy Fink, Mosheim Public Library and Town of Mosheim

Plaintiff's only allegations against these defendants are set forth in paragraph 43 of her amended complaint. The sum of her allegations against these defendants is as follows:

> . . . Plaintiff was refused entry and use of the Mosheim Public Library and was initially told by defendant Cindy Fink that she owed library fines. Plaintiff offered to pay the approximately $6.00 fines for copies, Ms. Fink refused, then changed her mind, took the money from the Plaintiff and finally gave her a receipt. Plaintiff then asked if she could check out a DVD and use the computer, since the fines had been paid, to which Ms. Fink refused. Defendant, Ms. Fink, refused to explain the reasons for denying her use of the public library materials, stating that 'she needed to bring it [her using the public facilities] before the Board at the next meeting.' Plaintiff left and sought assistance from Mayor Billy Myers and Alderman Weems, both who know the Plaintiff personally, and from Mr. Weems attended church with Plaintiff. Neither party seemed upset at Plaintiff, nor did they see a problem with her using the facilities.

> Plaintiff then phoned Defendant Fink who stated 'I am the Director and what I say goes and you are not allowed around this library.' Plaintiff reminded Ms. Fink of the extensive donations she gave to the Mosheim Public Library on prior occasions, to which Mr. Fink stated 'you have some problems'. . . .

Although plaintiff does not allege the date or dates of these acts, she does indicate in paragraph 43 of the complaint that after these events she "left and decided to end the pursuit." Inferentially from other allegations contained in the complaint, the Court discerns that she is referring to having left the State of Tennessee to pursue employment in Philadelphia, Pennsylvania as described in paragraph 45 of the complaint. According to paragraph 46 of the complaint, plaintiff returned to Tennessee from Pennsylvania in "early 2008." Thus it appears that the events related to the Mosheim Public Library occurred sometime prior to early 2008.

It is very difficult for the Court to discern what cause(s) of action the plaintiff is attempting to assert in her amended complaint against these defendants. As with the other defendants, however, the Court will assume, for the purpose of deciding the motions to dismiss, that plaintiff intended to assert all of her causes of action against these defendants.

These defendants do not specifically raise a statute of limitations defense in their motion to dismiss. It is likely, however, that plaintiff's claims against Cindy Fink, Mosheim Public Library and the Town of Mosheim are barred by the applicable statute of limitations. Given that all of the actions complained of which relate to these defendants appear to have occurred sometime before early 2008, these causes of action would be barred by the statutes of limitations because plaintiff's complaint was not filed until July 15, 2009. Since the defendants have not specifically raised the issue, however, the Court will not decide the matter on that basis.

Plaintiff, in the caption of her amended complaint, identifies Cindy Fink as a defendant,

"personally and as agent for Mosheim Public Library."  It is clear, however, from the allegations of paragraph 43 of the complaint that Cindy Fink is sued in her official capacity and paragraph 8 of the complaint identifies Cindy Fink as a defendant who "acted as an agent in her official capacity."An "official capacity" action is the functional equivalent of an action against the governmental entity itself. *Brandon v. Holt*, 469 U.S. 464 (1985). The claim against Ms. Fink, therefore, is redundant of the claim against the Town of Mosheim and Cindy Fink will be dismissed as a defendant.

Plaintiff has also identified the Mosheim Public Library as a defendant in the caption of her complaint and,  in paragraph 9 of the amended complaint,   identifies Mosheim Public Library as the employer of Cindy Fink and as an agent for the Town of Mosheim.  The Mosheim Public Library, as an agency of the Town of Mosheim, is not a separate suable entity and will be dismissed. *See Crawford v. Zeitler*, 326 F.2d 119 (6th Cir. 1964); *Reilly v. Hamblen County, Tennessee*, 2008 WL 4138117 (E.D. Tenn. Sept. 4, 2008).

The gravamen of Thornburg's complaint against the Town of Mosheim is that she has been refused entry into and use of the Mosheim Public Library.  Her claim, therefore, is one of deprivation of property without procedural due process. *See Cadle v. City of Newton Falls*, 961 F.2d 1576 at *3 (Table) (6th Cir. 1992).  In *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), *cert. denied*, 469 U.S. 834 (1984), the Sixth Circuit held that in order to state a claim for relief in federal court under § 1983 for deprivation of a property interest without procedural due process, a plaintiff must show that available state court procedures are not adequate to redress the alleged wrong.  Plaintiff may not seek relief under § 1983 without first **pleading** and proving the inadequacy of state administrative processes and remedies to redress her due process violations. *Jefferson v. Jefferson County Public School System*, 360 F.3d 583, 588 (6th Cir. 2004) (citing *Parratt v. Taylor*, 451 U.S.

527 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986), *Mansfield Apt. Owners Ass'n v. City of Manfield*, 988 F.2d 1469, 1475 (6th Cir. 1993)) (emphasis added). Plaintiff has not pled the inadequacy of state or administrative processes and remedies to redress her due process violations and, as a result, her amended complaint will be dismissed as to the Town of Mosheim.

### E. Tennessee Department of Human Services and Becky Davis

**1. Claims against the Tennessee Department of Human Services (TDHS) and Becky Davis (in her official capacity).**

Although TDHS and Davis have raised a number of arguments in support of their motion to dismiss, the threshold issue is whether TDHS, an agency of the State of Tennessee, and Davis, in her official capacity, are immune from suit in federal court. "From birth, the States and the Federal Government have possessed certain immunities from suit in State and Federal courts." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (*en banc*). This immunity "flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution" and "applies to actions against a state by citizens of the same state," "claims against a state by citizens of another state," and "actions against state officials sued in their official capacity for money damages." *Id.*; *see Lapides v. Board of Regents*, 553 U.S. 613, 616 (2000); *Edeleman v. Jordan*, 415 U.S. 651, 664-66 (1974); *S&M Brands, Inc. v. Cooper*, 527 F.3d 500 (6th Cir. 2008). "'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' *i.e.*, against the state." *S & M Brands*, 527 F.3d at 507 (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)).

There are three exceptions to a state's sovereign immunity: (a) when the state has consented to suit; (b) when the exception set forth in *Ex parte Young*, 209 U.S. 123, (1908), applies; and (c)

when Congress has properly abrogated a state's immunity. *S & M Brands*, 527 F.3d at 507 (citing *Kovacevich v. Kent State University*, 224 F.3d 806, 817 (6th Cir. 2000)). Plaintiff's claim for monetary damages against the TDHS and against Davis in her official capacity are claims against the State of Tennessee. The State is, therefore, immune from suit in federal court unless one of the three exceptions to sovereign immunity exits. The State of Tennessee has clearly not consented to this suit,[13] nor has Congress abrogated Tennessee's immunity. Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law. Plaintiff's monetary claims against the TDHS and Davis in her official capacity are therefore barred by the doctrine of sovereign immunity and will be dismissed.

## 2.     Claims against Becky Davis in her individual capacity

Although quite difficult to identify precisely, plaintiff's claims against Becky Davis in her individual capacity all appear to relate to her activities as an employee of TDHS who came to plaintiff's home and conducted "welfare checks," which plaintiff sees as "harassment," and Davis's failure to take action based upon plaintiff's complaint that a neighbor was exerting undue influence on her parents. Plaintiff's complaint fails to allege sufficient facts to establish that Davis personally violated any constitutional right of the plaintiff or committed any tort under state law. Under clearly established principles, Davis's performance of discretionary functions as a government employee are shielded from liability for civil damages unless the plaintiff can convince the Court that her conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Hughes v. City of North Olmsted*,

---

[13]   The State of Tennessee has consented to be sued in certain circumstances; however, the General Assembly has provided that the exclusive jurisdiction over all monetary claims against the State based on acts or omissions of state employees for which the State has waived sovereign immunity must be filed in the Tennessee Claims Commission. *Tenn. Code Ann.* § 9-8-307.

93 F.3d 238, 241 (6th Cir. 1996).  Plaintiff's claims against Davis, in her individual capacity, will be dismissed.

> **F.      Randy Christy, Mark McLane,[14] Glenna Estepp, John Huffine, Sheriff Steve Burns, Neil Matthews, Yhona Jones, The Greene County Sheriff's Department and Greene County Board of Education[15]**

Plaintiff sues two agencies of Greene County government, the Greene County Sheriff's Department and Greene County Board of Education, and seven individual employees of those agencies.   Once again, it is very difficult to discern from plaintiff's complaint what specific claims she makes against these individual defendants and governmental entities.  Because her complaint fails to allege sufficient facts to establish a cause of action against any of these defendants under 42 U.S.C. § 1983 or under any of the state tort law theories she sets forth, claims against each of these defendants will be dismissed for the reasons discussed below.

> **1.      Claims against Randy Christy, Mark McClain, Glenna Estepp, John Huffine, Sheriff Steve Burns and Neil Matthews, in their official capacity**

Each of these individual defendants is identified in plaintiff's complaint as an employee of the Greene County Sheriff's Department.[16]  As set forth above, these official capacity claims are in reality claims against Greene County, Tennessee, which plaintiff has not identified as a defendant in this action.  To establish municipal (or county) liability under § 1983, the plaintiff must establish that: (1) the plaintiff's harm was caused by a constitutional violation; and (2) the city or county was

---

[14]   Plaintiff has apparently incorrectly identified this defendant also.  According to the motion to dismiss, his correct name is Mark McClain.

[15]   Plaintiff has incorrectly identified the Greene County Board of Education as the Greene County School Board.

[16]   Sheriff Steve Burns is identified in the caption of plaintiff's complaint as a defendant; however, he is not identified as a defendant in the plaintiff's recitation of the parties in her complaint.

responsible for that violation. *Cash v. Hamilton County Department of Adult Probation*, 388 F.3d 539, 542-43 (6th Cir. 2004). Greene County is liable for harms resulting from a constitutional violation *only* when the injury resulted from an "implementation of [the county's] official policies or established patterns." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (Powell, J., concurring). "There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (internal citations omitted). A municipality or county cannot be held liable in § 1983 actions on a *respondeat superior* theory. *Monell*, 436 U.S. at 691.

Although the defendant identifies the Greene County Sheriff's Department as "the governmental entity which is responsible for the administration, management, staffing, training and certification of the persons given the actual authority or apparent authority to represent the Greene County Sheriff's Department," she does not allege any custom or policy of Greene County which could form the basis for liability against Greene County. Furthermore, she alleges absolutely no facts from which one could even remotely conclude that Greene County has such a policy. In addition, as set forth in the next section, plaintiff pleads no facts which would establish the elements of any of her state tort claims against any of these defendants and thus the County could not be liable under a *respondeat superior* theory under either § 1983 or state law.

**2.      Claims against Randy Christy, Mark McClain, Glenna Estepp, John Huffine, Sheriff Steve Burns and Neil Matthews, in their personal capacity**

Plaintiff's complaint contains no mention, so far as this Court can tell, of the defendant, John Huffine, except in the caption of the complaint. The only mention of Burns and Matthews in the body of plaintiff's complaint is found in paragraph 60 where plaintiff alleges that Burns and Matthews were part of a "huddle" around plaintiff's mother during court proceedings advising plaintiff's mother "that plaintiff is 'crazy,' 'paranoid schizophrenic and needs help,' is 'a nut case,' 'she is an alcoholic,' 'abuses drugs'." Furthermore, the only factual allegation which mentions Estepp is in paragraph 51 where plaintiff simply alleges that "Deputy Glenna Estepp was out of her vehicle and approached plaintiff as if to arrest her . . . ." The only factual allegation which refers to Christy is that he arrested plaintiff for domestic assault. Once again, the amended complaint is quite unclear just what theory of recovery plaintiff is pursuing against these defendants based on these allegations.

Even giving plaintiff's complaint a very liberal reading, she does not plead a *prima facie* case of defamation, which requires a showing that the defendant communicated defamatory matter to a third person with knowledge of its falsity or defamatory nature to the plaintiff, reckless disregard for the truth of statement, or negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Memorial Hospital*, 995 S.W.2d 569, 571 (Tenn. 1999). Having failed to allege facts that would establish an essential element of the claim, plaintiff's complaint therefore is insufficient to state a cause of action for defamation.

The only other possible causes of action which the plaintiff could be attempting to assert against these defendants would be for negligent or intentional infliction of emotional distress or invasion of privacy (false light invasion of privacy). To establish a *prima facie* case of intentional infliction of emotional distress, the plaintiff must plead and prove: (1) the conduct complained of

must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct must result in serious mental injury to the plaintiff. *Miller v. Willbanks*, 8 S.W.3d 607 (Tenn. 1999) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Plaintiff has not pled facts which would establish either of the first two elements of a *prima facie* case.

Under Tennessee law, a claim for negligent infliction of emotional distress requires that the plaintiff establish the elements of a general negligence claim: (1) duty, (2) breach of duty, (3) injury or loss, (4) causation in fact, and (5) proximate causation. *See Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996). In addition, the law provides recovery only for "serious" or "severe" emotional injury. *Id.* A "serious" or "severe" emotional injury occurs "where a reasonable person, normally constituted, would not be able to adequately cope with the mental stress engendered by the circumstances of the case." *Id*. (quoting *Rodriques v. State*, 52 Haw. 156, 283, 472 P.2d 509, 520 (1970)). Once again, plaintiff has not pled sufficient facts from which the elements of this cause of action could be established.

Lastly, Tennessee has recognized the tort of false light invasion of privacy, adopting the definition in § 652E of the Restatement (Second) of Torts: "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *See Secured Financial Soloutions, LLC v. Winer*, 2010 WL 334644 (Tenn. Ct. App. 2010). "Publicity" in this sense "means that the matter is made public, by communicating it to the public at large, or

to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (quoting comment A to section 652E of the Restatement (Second) of Torts. The element of publicity is not met if the communication is to a single person or even to a small group of persons. *Id.* Thus, plaintiff has not pleaded sufficient facts to establish this claim against these defendants either.

### 3.     Greene County Sheriff's Department

Plaintiff's claim against the Greene County Sheriff's Department fails for the same reason her claim against the Mosheim Public Library fails. The Greene County Sheriff's Department, as an agency of Greene County, is not a separate suable entity and will be dismissed. *Reilly*, 2008 WL 4138117.

### 4.     Yhona Jones and Greene County Board of Education

All of plaintiff's allegations against these two defendants are contained in paragraph 41 of the amended complaint. She alleges that she was hired in August, 2006, as a teacher's aide and dismissed two weeks later. As set forth above, the applicable statute of limitations for all of plaintiff's causes of actions is one year.[17] Since plaintiff's complaint was filed on July 15, 2009, and the events described in paragraph 41 of the amended complaint occurred in August, 2006, her claims against Jones and the Board of Education are time barred and will be dismissed.

### G.     Plaintiff's claim based on "excessive bail"

In paragraph 60 of her complaint, plaintiff alleges that the judge who presided over her domestic assault case set her bond at $1,000.00. This, she alleges, was for the purpose causing her

---

[17]   Plaintiff alleges that she was dismissed in violation of her contract, but she does not assert a breach of contract cause of action, nor does she attach any contract to her complaint.

to "remain in jail and/or suffer homelessness, in direct violation of United States Constitution, Eighth Amendment."  Curiously, however, she does not name the state court judge who presided over that case as a defendant and she does not direct her claim in this regard toward any named defendant.  In any event, her constitutional claim based on the bail set in her domestic assault case fails.  The test of excessiveness of bail is not whether the defendant is financially capable of posting bond (which she was) but whether the amount of bail was reasonably calculated to assure the defendant's appearance at trial.  *Stack v. Boyle*, 342 U.S. 1 (1951); *United States v. Beaman*, 631 F.2d 85, 86 (6th Cir. 1980).  Plaintiff has pleaded no facts which suggest that her bail was not set in an amount reasonably calculated to assure her appearance at trial and she fails to state a claim for relief on this ground.

### H.     Attorney's fees

Defendants Mountain States Health Alliance and Woodridge Hospital seek an award of attorney's fees and costs under 42 U.S.C. § 1988.  Likewise, the Greene County defendants request that they be awarded their reasonable attorney's fees and costs.  No other defendant seeks an award of attorney's fees.

Under 42 U.S.C. § 1988, a "prevailing party" may obtain attorney's fees.  42 U.S.C. § 1988.  The decision to award attorney's fees is committed to the sound discretion of the trial judge, as is the amount of any fee award.  *Tarter v. Raybuck*, 742 F.2d 977, 986 (6th Cir. 1984) *cert. denied* 470 U.S. 1051 (1985). Generally, if a plaintiff prevails, fees should be awarded "unless special circumstances would render such an award unjust."  *See Supreme Court of Virginia v. Consumers' Union of United States, Inc*., 466 U.S. 719, 737 (1980).  The rules are different as to prevailing defendants, however, who can recover only if the "suit was vexatious, frivolous, or brought to harass

or embarrass the defendant." *Kentucky v. Graham*, 473 U.S. 159, 165 FN9 (1985) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 N.2 (1983)). *See also Reilly v. City of Detroit*, 911 F.2d 733 (Table) (6th Cir. 1990).

None of the defendants who seek an award of attorney's fees in case has developed their argument in favor of such award in their briefs. None states the basis for such an award. Although the suit filed by the plaintiff in this case may very well be frivolous, there is no evidence in the record that it was brought to harass or embarrass any defendant. Given the lack of development of the issue, the Court declines to award attorney's fees. Costs may be sought by the defendants as provided by the Court's local rule.

## IV.    Conclusion

For the reasons set forth herein, the motion to dismiss filed by the defendants, Wayne Peterson, personally and as agent for Frontier Health, and Frontier Health pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, [Doc. 21] is **GRANTED**; the motion to dismiss filed by defendants, Mountain States Health Alliance and Mountain States Health Alliance d/b/a Woodridge Hospital pursuant to Rule 12, Federal Rules of Civil Procedure, [Doc. 23, 25] is **GRANTED**; the motion to dismiss filed by defendants Takoma Adventist Hospital and Wellmont Health System pursuant to Rule 12(b), Federal Rules of Civil Procedure, [Doc. 27], is **GRANTED**; the motion of defendants Randy Christy, Mark McClain, Glenna Estepp, John Huffine, Sheriff Steve Burns, Neil Matthews, Yhona Jones, the Greene County Sheriff's Department and Greene County Board of Education pursuant to Rule 12, Federal Rules of Civil Procedure, [Doc. 52], is **GRANTED**; the motion to dismiss filed by the Tennessee Department of Human Services and Rebecca Davis pursuant to Rule 12, Federal Rules of Civil Procedure, [Doc. 57], is **GRANTED**; and the motion

to dismiss filed by Town of Mosheim, Mosheim Public Library and Cindy Fink pursuant to Rule 12, Federal Rules of Civil Procedure, [Doc. 60], is **GRANTED**.  On the Court's own motion,  plaintiff's claim against Dr.Gaines, Dr. Marcus Kilgore and Dr. Remy Sagadacra are likewise **DISMISSED**.  Given that all defendants are dismissed from this action, plaintiff's complaint will be **DISMISSED WITH PREJUDICE** in its entirety.  Plaintiff's motion for injunction [Doc. 54], is **DENIED AS MOOT**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE